## ATTACHMENT IN ACTIONS FOR NECESSARIES.

[Circuit Court of Lucas County.]

### JOE NEMIT v. JOHN VARGO.

Decided, April 6, 1906.

*Demand in Writing Jurisdictional—Error Proceedings on Motion to Discharge Attachment—Costs—Meaning of the Word "Provided"— Section 6501, Relating to Proceedings as to Garnishee.*

1. The circuit court has jurisdiction to review an order by the common pleas, made on appeal from the overruling by a justice of the peace of a motion to discharge an attachment.
2. A demand in writing upon a debtor for necessaries, for the excess over ninety per cent. of his personal earnings, is a necessary condition to the issuing of an order for attachment. (*Hughes* v. *Shields*, 7 C. C.—N. S., 84, followed by a majority of the court. Judge Wildman adopts the contrary holding in *The K. B. Company* v. *Batie*, 2 C. C.—N. S., 358).

HAYNES, J.; PARKER, J., concurs in a separate opinion; WILDMAN, J., dissents in a separate opinion.

Vargo commenced a suit against Nemit for $20.42 before a justice of the peace in Oregon township, and caused an attachment to issue. There was a garnishee proceeding against the National Malleable Castings Company, and the order of attachment was served upon that company. After that Nemit, by his attorney, came in and moved to discharge the attachment for sundry and divers reasons, among others that no demand in writing had been made upon the said defendant for ten per cent. of his earnings or for any other amount of his earnings, as required by law. It does not appear here that the garnishee answered, but the justice, having overruled the motion to discharge the attachment which was made by the defendant, the case was brought up by appeal to the court of common pleas, under the statute, and the court of common pleas refused to discharge the attachment and affirmed the action of the justice of the peace, and the case has been brought here on error.

The first point made by counsel for Vargo is that the matter having been taken to the court of common pleas by appeal, the

action of that court is final in the case, and that this court has no jurisdiction to hear the petition in error. Now, a part of Section 6494, under the head "How property discharged from attachment", reads—

"Provided, that in any case the defendant may make a motion before the justice of the peace to dissolve the attachment, or release the property, money, or credits attached, or garnisheed, either or both; which if overruled may be appealed by the defendant to the court of common pleas, if in session, or to a judge thereof in vacation, by giving notice to that effect to the justice of the peace, but no bond shall be required. Upon such notice of appeal being given, the justice of the peace shall forthwith transmit to the clerk of the court of common pleas all the original papers; and thereupon, within three days from such notice of appeal, or upon such further time as may be for good cause allowed, said court or judge shall hear and determine said motion in the same manner as though it was originally brought in said court of common pleas, and upon a final hearing said court or judge shall forthwith transmit the judgment with said original papers to said justice of the peace, which judgment shall be entered upon the docket of said justice of the peace as the final determination of said motion; and said attachment property, moneys and credits shall be disposed of as directed in said judgment."

Section 6709, Revised Statutes, provides:

"A judgment rendered or final order made by any court of common pleas, or a judgment thereof, may be reversed, vacated or modified by the circuit court of the county wherein such court of common pleas is located, for errors appearing upon the record. All errors assigned in the petition in error shall be passed upon by the court, and in every case where a judgment or order is reversed or remanded for a new trial or hearing, the circuit court shall, in its mandate to the court below, state the error or errors found in the record upon which the judgment is founded. This act shall apply to pending actions, prosecutions and proceedings."

Section 6707, Revised Statutes, provides what is a final order:

"An order affecting a substantial right in an action, when such order in effect determines action and prevents a judgment, and an order affecting a substantial right made in a special proceeding or upon a summary application in an action after

judgment, is a final order which may be vacated, modified or reversed, as provided in this title."

Now as long ago as the 5th Ohio State Report the Supreme Court decided that an order to discharge an attachment was a proceeding that might be taken up upon a petition in error, before final judgment in the case, and that has been the law ever since. And we have no doubt that this order of the court of common pleas may be reversed by this court, or affirmed by it; that is to say, we have jurisdiction to hear it and pass upon it, and, therefore, the motion which was made to quash the writ will be overruled.

Coming now to the merits of the case, the question which has been presented here is one on which the circuits of this state have been unable to agree, the Circuit Court at Cincinnati holding in one direction, and the Circuit Court of Cuyahoga County in another direction, they being the only circuit courts that have passed on the question so far as we have learned. It was said in argument that counsel are anxious to have this court pass upon the question so that the court of common pleas could be guided by this court. This court is divided on the subject. The majority of us have come to certain conclusions, and we hope that one of these parties will take the case to the Supreme Court and have a final decision that will be binding on all courts throughout the state.

Now, in this case, Mr. McLeary, acting as justice of the peace, received the following affidavit:

"I, Benjamin F. Mallett, make oath and say that I am the agent of the plaintiff in the above entitled action, and that the claim in this action is for an amount due for groceries and meat sold and delivered to the defendant at his request, and I also make oath that the said claim is just and that I verily believe plaintiff ought to recover thereon the sum of $20.42; that the property about to be attached is not exempt from execution. I also make oath that the said claim is for necessaries. I further say on my oath aforesaid that I have good reason to, and do believe, that the National Malleable Casting Company is indebted to said defendant and has property, moneys and rights in action of said defendant in its possession or under its control subject to be attached in this action."

The affidavit was made before him.  Then was issued the order of attachment.  The statute in regard to attachments before a justice of the peace commences at Section 6489:

"The plaintiff shall have an order of attachment against any property of the defendant (except as hereinafter provided) in a civil action before a justice of the peace, for the recovery of money, before or after the commencement thereof, when there is filed, in his office an affidavit of the plaintiff, his agent or attorney, showing the nature of the plaintiff's claim, that it is just, the amount the affiant believes the plaintiff ought to recover, and that the property sought to be attached is not exempt from execution, and, if the personal earnings of the defendant are sought to be attached, that the defendant is not the head or support of a family, and has not in good faith the maintenance and support of a widowed mother, wholly dependent upon him for support, or that such earnings are not for services rendered within three months before the commencement of this action, or, that being earned within that time, the same amount to more than one hundred and fifty dollars, and that only the excess over that amount is sought to be attached; or that the claim on which judgment is sought is for work or labor or for necessaries; and except when the claim is for work, or labor, or for necessaries; also the existence of some one or more of the following particulars:  *  *  *.  No attachment shall issue by virtue of this chapter against the personal earnings of any defendant for services rendered by such defendant within three months before the commencement of the action or the issuing of the attachment, unless the defendant is not the head or support of a family, or unless the amount of such earnings exceeds one hundred and fifty dollars, and then only as to the excess over that amount, or unless the claim is one for necessaries, and then for only ten per centum of such personal earnings."

The affidavit filed in this case does not set out these facts, but simply says there is property there not exempt from execution. Now, having proceeded that far, the chapter goes on as to the garnishee, and states that it shall bind the earnings due at the time of such services that shall become due from the time of service until the trial of such cause—

"Provided, however, that of the personal earnings now exempted under the provisions of Sections 5430, 5441, 5483 and 5548 of the Revised Statutes as amended April 26th, 1898, shall, in addition to the ten per centum for necessaries"  *  *  *,

This clause also relates to the exemption of ninety per cent. of the earnings.

* * * "be further liable to the plaintiff for the actual costs of any proceeding brought to recover the same in any sum not exceeding four dollars, and such garnishee may pay to such debtor an amount equal to ninety per centum of such personal earnings, less the sum of four dollars for actual costs as herein provided, which shall be due at the time of the service of process, or which may become due after such service and before trial, and be released from any liability to such creditor."

Now, down to 1894, that is the way the law stood. The statute allowed an attachment for necessaries without filing affidavit of fraud, non-residence, etc., as allowed by the statute, Section 6849, but expressly declares that they shall only have the excess over and above the amount that the party has exempted from liability. That in this particular case would be ten per cent. of the earnings before he had his attachment, and when the garnishee paid the amount of ten per cent. of the earnings it was first applied to the four dollars of costs. In 1894 the statute was amended by adding the following clause:

"Provided further, that the person bringing an action for necessaries shall first make a demand in writing for the excess over and above ninety per centum of the personal earnings of the debtor; and no costs or expense shall be chargeable to the defendant debtor in such action if he tender payment in money or duly accepted order for the excess of his personal earnings over and above ninety per centum thereof upon such written demand made therefor."

There comes the stress of the case. Some courts, and one member of this court, are of the opinion that the attachment issued lawfully, but upon showing being made that no demand was made, that the costs shall not be charged against the debtor, and that was the opinion of the court below. That is the opinion of the Circuit Court of Cuyahoga County. On the other hand, the Circuit Court of Hamilton County held a contrary doctrine, and held that the attachment can not issue until the demand has been made, and of that opinion is a majority of this court.

The statute provides expressly that a person bringing an action for necessaries shall first make a demand in writing for the excess over and above ninety per cent. of the earnings of the debtor, and he shall not be charged with any expenses if he makes payment or gives an accepted order for ten per cent. of his personal earnings. The majority of this court are of the opinion that that demand must first be made before the party has a right to issue his order of attachment. It would seem to be very proper to require that that should be set forth in the affidavit for the information of the court. But at any rate, it is agreed in this case that no demand was made, and that the order was issued. And holding this view of the case, the majority of the court are of the opinion that the court erred in refusing to dismiss the attachment. We think that that was a condition that was fixed by law precedent to his right to have an order of attachment issue, and that he should have followed the statute; and that there ought not to be an order of attachment issued and thereby compel the debtor to hire a lawyer to go in and try to make a defense. It seems to us that the clear view of the Legislature was that the demand must first be made as a condition to having that order of attachment issued, and holding this view an order has been made reversing the action of the court of common pleas.

PARKER, J.

We are all in accord upon one proposition, and that is that this statute is exceedingly hard of interpretation. There is not one of us quite sure we are right on any one point. It is true that in this language, "the person bringing an action for necessaries shall first make a demand in writing for the excess over and above ninety per centum of the personal earnings of the debtor" before proceeding in an action; the term "action" is qualified by Judge Haynes to signify "such action", i e., the special proceeding under consideration or treatment, and yet we think that the term "proceeding" having been used in the same section in a number of instances and the whole section dealing

with a matter of reaching wages, otherwise exempt, by a special proceeding, in certain cases, that is, either by attachment or a proceeding in aid of execution, which is also contemplated here, we believe that we are authorized to conclude that the Legislature had such special proceedings in mind in the use of the word "action"—i. e., action of that character, though strictly, the word "action" applies to a civil action. I am not sure but the Circuit Court of Hamilton County has construed this statute as meaning that before the civil action for the money is instituted the demand must be made, but we are inclined to think that that is going rather farther than was intended by the Legislature. Because there is no provision in this statute as to what shall result from a failure of the plaitiff to make a demand, whereby opportunity may be given to the defendant to pay without suit and thus save himself costs; and provision being made for the result flowing from such demand, whether complied with or not, it seems to me that a failure to make such demand was not contemplated, but that it was contemplated that the demand would be made in all cases. It will be noted that the casting of the burden of costs upon the plaintiff where no demand is made is not expressly provided for in this statute at all, but in order to reach that result it is necessary to read something into the statute. In other words, it is necessary to read into the statute that if the creditor, shall fail to make demand before instituting the suit or before instituting the proceedings, that then the result shall be that he shall not collect this additional four dollars costs out of the ninety per cent. that the debtor might otherwise retain. It is apparent that it is just and proper that some such result should flow from his failing to make the demand, but if we rely upon the letter of the statute the creditor could avoid this result and could require the debtor to pay this additional four dollars costs by simply failing to make any demand. The results, we repeat, flowing from the making of the demand if complied with, and flowing from the making of the demand if not complied with are provided for in the statute; but a result to flow from the failure to make any demand at all, as I read the statute, is not expressly provided for. Certain of the courts have read into the statute, or have so construed the

statute, as that the result of failing to make the demand shall be a failure to maintain the special proceedings; holding that the demand in writing is a condition precedent to the institution of the suit, just as the demand upon a tenant in forcible detainer to vacate the premises is a condition precedent to the institution of the suit, and just as the demand upon a claim against an administrator before suit is begun is a condition precedent to the institution of the suit, and other illustrations might be mentioned.

This provision as to the demand follows the word "provided," and is in a clause which starts out with the word "provided." It is true that ordinarily a clause starting out with this word is a proviso intended to qualify in some respect that which has gone before—it does not stand as an independent provision—but I think a careful reading of this whole section will show that the framer of it did not use the word "provided" in that technical sense, because it occurs several times in the course of this statute and in some cases it can not be regarded as a clause qualifying that which has preceded, but it is the introductory word of independent provisions when the conjunction "and" would have served the same purpose. I shall not take time to read the statute to illustrate this and it would take some time to discuss the section fully under this head, but upon reading it, it will be seen that the word "provided" occurs four or five times in the course of the section at the beginning of sentences, and that it is certainly not in all cases used in the technical sense of the introduction of a proviso qualifying what has preceded it. I concur with Judge Haynes in his conclusion.

WILDMAN, J. (dissenting):

Upon the first question involved raised by the motion to quash service, as it is in form, although perhaps it should be a motion to dismiss the proceeding in error, I am in accord with the majority of the court. I think that neither a motion to quash service nor a motion to dismiss the proceeding in error should prevail upon the grounds urged in argument, or any other that occur to me.

I desire, however, to offer a few words in explanation of my dissent from the conclusion arrived at by a majority of the court, which conclusion has led to the reversal of the judgment of the court below. The construction of Section 6501, Revised Statutes, is one of much difficulty. The question is a close one, and it is not surprising that courts and attorneys differ in their views. I do not think that it is clearly provided by this statute, as Judge Haynes holds, that before bringing an action for necessaries, even if property is attached in the proceeding, there must be, to give the court jurisdiction, a preliminary demand for ten per cent. of the earnings sought to be attached.

An examination of this statute discloses that it is simply a modification of previous enactments in Sections 5430, 5441, 5483 and 5548 of the Revised Statutes. Without stopping to read those sections it is enough to say that they also provide for the subjecting of ten per cent. of the earnings of the debtor to the payment of his debt for necessaries, but there is no provision in those sections that any portion of the ninety per cent. remaining may be applied to the payment of costs in the suit in which the attachment was obtained. The Legislature, apparently recognizing that much of the benefit of the provision in favor of a creditor suing for necessaries by reason of the giving to him of ten per cent of the earnings would be unavailable to him if he were required to pay the costs of the proceeding out of his own pocket, provided by this Section 6501 that the debtor in addition to his liability for the ten per cent. should be further liable to the plaintiff for the actual costs of any proceeding brought to recover the same in any sum not to exceed four dollars, the Legislature carefully guarding the interests of the debtor by fixing the maximum costs which might be so taken out of his ninety per cent., and then added this language:

"And such garnishee may pay to such debtor an amount equal to ninety per centum of such personal earnings, less the sum of four dollars for actual costs as herein provided, which shall be due at the time of the service of process or which may become due after such service and before trial, and be released from any liability to such creditor."

That is, as has been provided in the sections before, the garnishee may pay over to the debtor ninety per cent., leaving only the ten per cent. to be applied, and he would then be exonerated from any further liability to the creditor by reason of having released all the earnings excepting the ten per cent. But the law in Section 6501 qualifies that by permitting the paying of the costs, to the maximum amount of four dollars, from the ninety per cent., and then adds: "Provided further, that the person bringing an action for necessaries shall first make a demand in writing for the excess over and above ninety per centum of the personal earnings of the debtor." In other words, the garnishee shall be so exonerated from liability provided that the creditor has first made this demand.

I think that there is no provision in this statute that before the beginning of an action the creditor shall make a demand. That would be something of an anomaly in our law. In order words, it would seem absurd to make a provision that a person suing for the price of necessaries must make a demand before instituting suit in order to give the court jurisdiction, when a person suing for any other thing need make no demand in order to give the court such jurisdiction. Now, to avoid this absurdity the majority of the court, as I understand their position, think that there should be read into this statute, and there is no other way of avoiding it, some language after the words "bringing an action," so as to make it express the idea that it is considering only the case of a person bringing an action for necessaries in which he seeks to subject earnings or ten per cent. of the earnings of his debtor by attachment; but that language is not found in the statute, and the construction for which I contend requires no interpolation.

My impression is that the office of a proviso in a statute is to qualify that which goes before. Here is an enactment, not that the creditor *shall* make a demand before suit; but that the garnishee may be exonerated from liability provided that the demand is first made. It is a provision that the enactment of the section immediately preceding shall be operative in case of such demand and then, in order to make the matter more

clear, the statute proceeds to provide that even if the demand is made, no cost or expense shall be chargeable to the defendant debtor if he tender, in the way provided, the amount of the excess over ninety per cent. of his personal earnings.

I think that the court below was right in the construction which it placed upon the statute, and in holding that a demand was not essential to give the court jurisdiction, of either the action for necessaries or the attachment proceeding. I am disposed to follow the judgment of the Cuyahoga Circuit Court, consisting of Judges Winch, Hale and Marvin, rather than that of the Circuit Court of Hamilton County. For convenience, reference may be made as supporting the view of the majority of the court to the case in 12 O. D., 438, a decision of the Clarke County Common Pleas, and the case referred to in Hamilton county found in 7 C. C.—N. S., 84. The decision of the Cuyahoga Circuit Court, holding that the demand is not essential to confer jurisdiction, is reported in 2 C. C.—N. S.; 358.

I do not know that I care to add anything to what I have already said except perhaps that the provision as to notice in a forcible detainer suit is based altogether upon a different statute and one where the phraseology is so dissimilar to that employed here that it seems to me it can have no application. I think that this whole section, which is amendatory of the original Section 6501, has especial reference to the matter of costs, permitting the same to be taken from the ninety per cent., with the limitation that the maximum amount thereof shall not exceed four dollars. It seems clear to me that that was what was in the mind of the enactors of the section. It does not occur to me that the treatment of the clause relating to demand as a mere proviso or qualification of what precedes it, is a technical construction. It appears to me to be the natural one, and the other construction, which is maintained by a majority of the court, to be the one more difficult to sustain and one requiring, as I have already suggested, a change in the phraseology of the statute.

*Potter & Potter,* for plaintiff in error.

*C. H. Durand,* for defendant in error.